Jo Ann STOPKA, Plaintiff–Appellant,

v.

ALLIANCE OF AMERICAN INSURERS, Rodger S. Lawson, C. Clarke Imbler, et al., Defendants–Appellees.

No. 97–1974.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1998.

Decided April 1, 1998.

Adrianne S. Harvitt, Harvitt & Associates, Milwaukee, WI, Constantine J. Gekas (argued), Gekas & Associates, Chicago, IL, for Plaintiff–Appellant.

Shayle P. Fox, Lawrence M. Cohen (argued), Todd D. Steenson, Fox and Grove, Chartered, Chicago, IL, for Defendant–Appellee.

Before EASTERBROOK, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Jo Ann Stopka brought this action against her employer, Alliance of American Insurers, alleging that Alliance's treatment of her violated several employment laws: the Equal Pay Act ("EPA"), Title VII, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). In addition, Ms. Stopka brought a state law claim for intentional infliction of emotional distress. Alliance subsequently brought counterclaims against Ms. Stopka for conversion and breach of fiduciary duty alleging that Ms. Stopka had used Alliance's property for her personal benefit. The district court granted summary judgment in favor of Alliance on all of Ms. Stopka's claims except for her Title VII and ADA claims. The district court then conducted a jury trial on both of those claims along with Alliance's counterclaims. The jury entered verdicts against Ms. Stopka on both her claims; it found in favor of Alliance on both its counter-claims. Ms. Stopka now appeals the district court's grant of summary judgment in favor of Alliance on her Equal Pay Act claim; in addition, she appeals two evidentiary rulings made by the district court during the trial and the district court's denial of her motion for a new trial. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

### A.

Alliance is a national trade association of property and casualty insurers. Alliance employed Ms. Stopka between August 1984 and June 17, 1996. Ms. Stopka was initially employed as an office manager but gradually rose through the ranks to the position of vice president in charge of the administrative division. In that position, Ms. Stopka was responsible for the oversight and management of all the administrative functions for Alliance's home office in Schaumburg, Illinois, and its regional offices around the country.

In mid–1992, Ms. Stopka discovered that she was paid less than the other vice presidents. She believed that the discrepancy between her salary and the salary of the other vice presidents was due to her age and her sex. She noted that she was the only female division head and that she was paid less than the male division heads. After filing an internal complaint, Ms. Stopka was given a small raise.[1] However, she did not believe that the raise was adequate, given the salaries paid to the male vice presidents. Accordingly, she filed a charge of discrimination against Alliance in 1995.

Ms. Stopka was on several periods of disability leave during 1994–96. When Ms. Stopka returned to work in January 1995, her doctor informed Alliance that Ms. Stopka should not work more than eight hours a day. In the district court, the parties disputed both the extent to which Alliance was aware

---

1. Ms. Stopka alleges that the Alliance officers to whom she complained did not inform her of this salary increase. Instead, she claims that she first discovered the raise when she noticed an increase in her disability pay.

of Ms. Stopka's mental and physical condition and the effectiveness of Alliance's efforts to accommodate Ms. Stopka's needs.[2] In July 1995, Ms. Stopka began another period of extended leave due to illness.

On August 25, 1995, Alliance informed Ms. Stopka that her FMLA leave had expired as of August 24, 1995, and that, given the uncertainty as to the date of her return, it would begin to seek a replacement for her. Alliance then reorganized its administrative operations, created a position of Director of Human Resources and distributed certain of Ms. Stopka's responsibilities to other Alliance employees. Finally, in November 1995, shortly after Ms. Stopka informed Alliance that she would not be able to return to work until January 1996, Alliance hired a Director of Human Resources.

When Ms. Stopka was ready to return to work in May 1996, Alliance offered her the opportunity to interview for various secretarial and clerical positions. Ms. Stopka refused this offer. In May 1996, Alliance also discovered that Ms. Stopka's initial job application, filed in 1984, had not stated accurately her educational background. Ms. Stopka's resume stated that she had attended New Mexico State University and that she had received a degree in business administration from the University of Texas El Paso. In fact, she had not attended either school and never attended college. Alliance also had discovered earlier that Ms. Stopka had redeemed points earned in Alliance's long distance telephone accounts for her personal use.[3] On June 17, 1996, Alliance terminated Ms. Stopka's employment.

### B.

In December 1995, Ms. Stopka brought this action against Alliance alleging violations of the EPA, Title VII, the ADEA, the ADA and the FMLA. In addition, Ms. Stopka brought a state law claim for intentional infliction of emotional distress. In March 1996, Alliance brought counterclaims against Ms. Stopka for breach of fiduciary duty and conversion based on her personal use of the "frequent caller points" earned by Alliance in its long distance telephone accounts.

On December 9, 1996, the district court granted Alliance's motion for summary judgment on all of Ms. Stopka's claims except her claims under Title VII and the ADA. The district court then held a jury trial on these remaining claims and on Alliance's counterclaims. Following a week-long trial, the jury returned a verdict in favor of Alliance on both Ms. Stopka's Title VII and ADA claims. The jury also returned a verdict in favor of Alliance on both of its counterclaims.

On appeal, Ms. Stopka first challenges the district court's grant of summary judgment in favor of Alliance on her EPA claim.[4] The district court granted summary judgment in favor of Alliance on that claim on the ground that Ms. Stopka had failed to establish that her position was "substantially similar" to the position held by any higher paid male employee. Ms. Stopka also appeals the district court's exclusion of certain evidence offered in support of her Title VII wage discrimination claim. Specifically, Ms. Stopka asserts that the district court abused its discretion by excluding evidence that Alliance paid other female employees less than similarly-situated males. The district court excluded that evidence under Rule 403 of the Federal Rules of Evidence on the ground that, although potentially relevant, the possibility of jury confusion and of waste of time outweighed any probative value. In addition, Ms. Stopka asserts that the court abused its discretion by excluding evidence that Alliance's general counsel made a statement indicative of a bias against women employees. The district court excluded such evidence as

---

2. Ms. Stopka claimed that she was working more than eight hours a day after her return. Alliance, however, asserted that it was unaware of how many hours Ms. Stopka was actually working.

3. Alliance's counterclaims were based on Ms. Stopka's redemption of these points. For a more complete description of the facts concerning this

incident, see *Stopka v. Alliance of Am. Insurers*, No. 95 C 7487, 1996 WL 494269 (N.D.Ill. Aug. 27, 1996) (denying Ms. Stopka's motion for summary judgment on Alliance's counterclaims).

4. This is the only aspect of the district court's summary judgment ruling challenged by Ms. Stopka on appeal.

irrelevant because there was no evidence establishing a nexus between the general counsel's comments and the employment actions challenged by Ms. Stopka.

## II

### DISCUSSION

■ We turn first to Ms. Stopka's contention that the district court erred in granting summary judgment in favor of Alliance on her Equal Pay Act claim. It is well established that we conduct plenary review of a district court's entry of summary judgment. *See Bahl v. Royal Indem. Co.,* 115 F.3d 1283, 1289 (7th Cir.1997). In undertaking that review, we are obliged to assess the record in the light most favorable to the nonmoving party and to draw all reasonable inferences in that party's favor. Therefore, we shall uphold a grant of summary judgment only when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

### A.

■ To establish a prima facie case of wage discrimination under the EPA, Ms. Stopka must show that: (1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions. *See Soto v. Adams Elevator Equip. Co.,* 941 F.2d 543, 548 (7th Cir.1991). The district court held that Ms. Stopka failed to meet the second element of the prima facie case. Specifically, the court took the view that the record revealed that the other five vice presidents had responsibilities substantially different from Ms. Stopka's. In this regard, the district court contrasted Ms. Stopka's largely administrative role with the roles of the other vice presidents which involved more direct involvement in the business of insurance (e.g., research, public policy development, legislative or regulatory representation, legal matters, tax matters, financial regulations, public relations).

■ Ms. Stopka emphasizes that she may establish that her job was substantially equal to those held by the others by relying on actual job performance and content rather than job titles, classifications or descriptions. *See Soto,* 941 F.2d at 548. The issue, she reminds us, is whether her job and those of her male colleagues involved a "common core of tasks" or whether "a significant portion of the two jobs is identical." *Fallon v. Illinois,* 882 F.2d 1206, 1209 (7th Cir.1989) (internal quotations omitted). Once this common core is established, any differences in duties or responsibilities between her and her male counterparts must be substantially different to justify the salary disparity. *See Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1461 (7th Cir.1994). The EPA does not require proof of discriminatory intent. *See Patkus v. Sangamon–Cass Consortium,* 769 F.2d 1251, 1260 n. 5 (7th Cir.1985).

In Ms. Stopka's view, under these standards, the district court erred in holding that her job was substantially different from those held by her male colleagues. She emphasizes that she was a management-level officer of Alliance—a division vice president and an executive. Indeed, she continues, although her substantive responsibilities were different from the other division vice presidents, she shared with them a common core of substantially similar tasks requiring substantially equal skill, effort and responsibility: Ms. Stopka, like the other division heads, was responsible for managing a division; she had the responsibility and authority to hire, fire, evaluate and supervise her employees; she was charged with managing the division budget. Indeed, Ms. Stopka had the largest division in terms of the number of employees. Moreover, all division vice president positions were ranked equally under Alliance's Salary Administration Program.

Ms. Stopka further points out that, despite these core similarities between her responsibilities and those of the other vice presidents, and even though she was among the most senior employees in terms of tenure, she was paid significantly less than male vice presidents. Indeed, she was paid less than sever-

al other men who were neither division heads, full vice presidents nor elected corporate officers. At the very least, she contends, there is a genuine issue of material fact as to whether her position was substantially equivalent to the jobs held by the other five vice presidents.

After our examination of the record, we are convinced that the district court properly disposed of this contention and correctly held that Ms. Stopka failed to establish the second element of her prima facie case. To establish an EPA claim, Ms. Stopka had to prove that Alliance paid her less than it paid male employees "for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). According to the applicable EEOC regulations, the terms equal skill, equal effort and equal responsibility "constitute separate tests, each of which must be met in order for the equal pay standard to apply." 29 C.F.R. § 1620.14(a). Here, the most important focus is on the "skill" portion of this three-part inquiry. We believe that Alliance has established that there is no genuine issue of triable fact on the issue of whether Ms. Stopka possessed skills that were of the same importance to the operation of Alliance as those possessed by the other vice presidents. "Skill" includes, of course, such factors as "experience, training, education, and ability." 29 C.F.R. § 1620.15(a).

The record makes clear that Ms. Stopka's job was substantially different from the jobs performed by the other vice presidents. Most importantly, the other vice presidents primarily had responsibility for key aspects of Alliance's core substantive insurance policymaking. This was a responsibility that Ms. Stopka admittedly did not have the skills to perform and had never performed. Therefore, despite her vice presidential rank, her role in the direction of the company was understandably more circumscribed.[5]

The district court therefore correctly entered summary judgment in favor of Alliance on Ms. Stopka's EPA claim. The evidence is uncontradicted that the other vice presidents performed tasks substantially different from those performed by Ms. Stopka and substantially more important to the operation of the company.

## B.

■ We now examine whether the district court abused its discretion in excluding evidence with respect to the alleged discriminatory treatment of two other female Alliance employees. The evidence offered by Ms. Stopka involved two other women employed by Alliance who received lower salaries than their male counterparts. The district court excluded this evidence under Rule 403 of the Federal Rules of Evidence. The district court noted that, in order for the evidence to be relevant, Ms. Stopka would have to show that Alliance discriminated against the two women based on their gender. Because Alliance had produced significant evidence indicating the two women's salaries were unrelated to their gender, the relevance of the evidence could be ascertained only after substantial collateral litigation. In the district court's view, the potential for jury confusion

---

5. As noted earlier, Ms. Stopka asserts that all division vice presidents were ranked equally under Alliance's Salary Administration Program. In addition, Ms. Stopka contends that she was not only paid less than the male vice presidents, but was also paid less than the minimum salary mandated by the Salary Administration Program. However, Alliance put forth evidence that it found the Salary Administration Program to be unworkable and that the program eventually served only as a guideline rather than a fixed base for salary adjustments. See R.174 at ¶ 77. Indeed, Ms. Stopka admitted that the yearly increases in salary grade level under the Salary Administration Program had no impact on the salary increases an individual employee would receive. See id. at ¶ 78; R.191 at ¶ 78. In addition, Ms. Stopka admitted that she was aware that other employees were paid outside the range for their salary grades. See R.174 at ¶¶ 87–88; R.191 at ¶¶ 8788. Moreover, it is important to emphasize that the determination of whether two jobs are "substantially equal" under the EPA rests on " 'actual job performance and content—not job titles, classifications or descriptions.' " EEOC v. Mercy Hosp. & Medical Ctr., 709 F.2d 1195, 1197 (7th Cir.1983) (quoting Gunther v. County of Washington, 623 F.2d 1303, 1309 (9th Cir.1979), aff'd, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981)). As explained above, the record in this case makes clear that Ms. Stopka's job was substantially different from the jobs performed by the other vice presidents.

and the expenditure of time. substantially outweighed any probative value.

Ms. Stopka submits that the exclusion of this evidence was an abuse of discretion. She relies heavily on this court's holding in *Riordan v. Kempiners*, 831 F.2d 690 (7th Cir.1987). In *Riordan*, this court stated that, in light of the difficulties inherent in attempting to prove intentional discrimination, "[a] plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled by evidentiary rulings that keep out probative evidence because of crabbed notions of relevance or excessive mistrust of juries." *Id.* at 698.

Ms. Stopka offered evidence that Alliance had paid two other female employees substantially less than their male colleagues. First, Ms. Stopka offered the case of Lenore Marema, an in-house attorney who, despite her significant seniority, was paid substantially less than a male lawyer who performed nearly identical work. Ms. Stopka's evidence showed that when Ms. Marema complained about this discrepancy, Alliance management responded with a nominal raise and threatened her with discharge if she continued to have a "bad attitude." Second, Ms. Stopka offered the case of Morag Fullilove. Ms. Fullilove was an executive official with Alliance who was paid $130,000. Her position was eliminated in a 1991 reorganization, and she was offered a different position at a salary of $70,000. She opted for a severance package instead. Alliance then gave that same job to a male employee—a former subordinate of Ms. Fullilove, who took the job at his then-existing salary of $79,000. In Ms. Stopka's view, these discrepancies cannot be explained by any neutral rationale because both women were equal or superior to their higher paid male counterparts in education, experience, tenure and performance. Moreover, this evidence involved the same decisionmakers who made the decisions concerning Ms. Stopka's compensation. Therefore, she contends, these acts of discrimination against employees similarly situated to Ms. Stopka are relevant and admissible to show motive, intent, pattern and practice, and pretext. *See Hunter v. Allis–Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1423–24 (7th

Cir.1986). Indeed, such evidence is essential to a plaintiff's case, given the difficulty of proving motive and pretext. *See id.*

Furthermore, continues Ms. Stopka, the evidence about Ms. Marema and Ms. Fullilove was discrete, limited in time and involved the same witnesses at the trial. There would have been little or no confusion or waste of time; any additional trial time was more than justified by the compelling relevance of this evidence.

■ In assessing Ms. Stopka's submission, we begin by noting that our case law has recognized consistently that evidence of discrimination against other employees is relevant only if the plaintiff is able to show that the action taken against the other employee was based on discrimination. *See Sims v. Mulcahy*, 902 F.2d 524, 531 (7th Cir.), *cert. denied*, 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). Accordingly, this court has held that, when the evidence appears to be of slight probative value, district courts may properly exclude it under Rule 403 to avoid a series of collateral "trial[s] within the trial" which would result in confusion and undue delay. *Id.* Upon examination of the record, we are satisfied that the district court acted within its discretion in excluding this evidence. There was significant evidence indicating that Ms. Marema's and Ms. Fullilove's salaries were unrelated to their gender. With respect to Ms. Marema, the difference between her salary and that of her male counterpart was due to legitimate market forces—in particular, her male colleague's specialized practice in insurance tax. With respect to Ms. Fullilove, the male employee who eventually took on the job offered to Ms. Fullilove took on the responsibilities of that job in addition to his then-existing job. In short, Ms. Fullilove's male colleague accepted a job significantly different from the one she was offered. Under these circumstances, we shall not disturb the estimation of the district court that, the potential for jury confusion and undue delay outweighed any probative value the evidence might have.

■ Several additional factors convince us that the district court's decision to exclude this evidence did not result in an unfair trial.

It is important to note that in the presentation of her Equal Pay Act claim, Ms. Stopka was allowed to produce a significant amount of evidence to show that the wage discrepancy between her and the other vice presidents was due to gender discrimination. Furthermore, the district court revisited its in limine decision [6] to exclude the evidence concerning Ms. Marema and permitted its use during Ms. Stopka's cross-examination of Alliance's president. Under these circumstances, we shall not disturb the ruling of the district court.

### C.

■ We turn now to another evidentiary ruling of the district court concerning the exclusion of certain remarks made by the general counsel of Alliance. In Ms. Stopka's view, these remarks demonstrated a bias on his part against women workers and therefore were admissible to show the corporation's discriminatory intent. The general counsel allegedly made a gender-biased remark at an insurance industry dinner party in New York City. The district court excluded this evidence because there was no evidence that the general counsel was a decisionmaker with respect to Ms. Stopka's employment. *See Cheek v. Peabody Coal Co.*, 97 F.3d 200, 203 (7th Cir.1996). The district court also noted that there was no indication that the comments reflected Alliance policy. Thus, the court concluded, there was no nexus between those comments and the employment actions at issue in this case.

At a dinner party in New York City, Alliance's general counsel engaged in a conversation with a female attorney concerning the general inequity in the salaries of men and women. During this conversation, the general counsel remarked that such a wage disparity was justified because "women don't work as hard as men." Ms. Stopka contends that this remark, by a high-ranking Alliance official who was involved in Alliance's review of Ms. Stopka's wage discrimination complaint, is relevant evidence of Alliance's intent to discriminate against Ms. Stopka because of her sex. In her view, the basis of the district court's exclusion of the gender-biased remarks—that he was not a decisionmaker and that there was no nexus between his remarks and the adverse pay decisions—is simply wrong.

■ The Title VII case was presented to the jury under the direct method of proof. When a plaintiff proceeds under the direct proof method, allegedly discriminatory statements are relevant, as the district court correctly recognized, only if they are both made by a decisionmaker and related to the employment decision at issue. *See Huff v. UARCO*, 122 F.3d 374, 384 (7th Cir.1997). We do not believe that the record will support a characterization of the general counsel as a decisionmaker with respect to Ms. Stopka's employment situation. *See Wallace v. SMC Pneumatics*, Inc., 103 F.3d 1394, 1400 (7th Cir.1997) (holding that the fact that a nondecisionmaker may have uttered a hostile stereotype is not evidence that the stereotype played a role in the challenged employment decision). Moreover, the general counsel's dinner table comment certainly cannot be characterized as related to any decisions concerning Ms. Stopka's salary or working conditions.

Finally, Ms. Stopka's reliance on *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), is misplaced. In *Price Waterhouse*, the Court held that remarks made by nondecisionmakers within the partnership were relevant to the plaintiff's claim of discrimination. *See id.* at 251–52, 109 S.Ct. at 1791–92. However, those remarks were contained in evaluations of the plaintiff which ultimately were reviewed by the decisionmakers. *See id. In this case, the remark at issue had no connection whatsoever to Alliance's decisions concerning Ms. Stopka's compensation.*

We think that the district court acted well within its discretion in excluding the remark from evidence. In any event, even if the district court committed error in excluding

---

6. *Cf. Riordan v. Kempiners*, 831 F.2d 690, 697 (7th Cir.1987) (noting the need to reevaluate in limine rulings in light of actual trial experience).

the remark, we do not believe that, in light of all the evidence admitted at trial, the error would have affected the result.

### D.

Finally, Ms. Stopka submits that the district court committed error in denying her motion for a new trial. That motion was based upon Ms. Stopka's contention that the trial court had erred in its omission of the evidence that we have described in the earlier sections of this opinion. Although conceding that the abuse of discretion standard usually applies to our review of the denial of such a motion, Ms. Stopka contends that we ought not apply that standard here because the district court did not provide an explanation for its decision and therefore cannot be said to have exercised its discretion.

After examination of the motion for new trial, we must conclude that Ms. Stopka's argument is without merit. The motion for new trial was based in great part on the evidentiary issues discussed earlier in this opinion. The district court had already given those matters its full attention and had provided a written explanation for its exclusion of that evidence. Ms. Stopka gives no specific reason for requiring further explanation as to the other matters raised in her motion. Under the circumstances of this case, therefore, we do not believe that considerations of fairness to Ms. Stopka or of judicial economy justify a remand to the district court for further explanation.

### Conclusion

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.