[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative appeal by the plaintiff, Connecticut Commission on Human Rights and Opportunities ("CHRO")[1] from a final decision of a human rights referee of the CHRO, dismissing on January 26, 2000, a complaint brought against the defendant, City of Torrington ("the City"). The complaint by four female employees of the City alleged violations of the Equal Pay Act, 29 U.S.C. § 206 (d)(1), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and General Statutes § 46a-60 (a)(1). The CHRO's appeal from the decision of the human CT Page 5686 rights referee is authorized by General Statutes §§ 46a-94a and 4-183
of the Uniform Administrative Procedure Act ("UAPA"). For the reasons set forth below, the court finds in favor of the plaintiff.
The individual complaints (later consolidated) in this matter were filed in December 1996, were investigated, and a finding of reasonable cause was made by the CHRO. After the failure of conciliation efforts, the complaint was certified to the office of public hearings where a hearing was held on May 17-19, 1999. (Return of Record ("ROR"), Volume 1, Item 1, p. 2 (back).)
The human rights referee's comprehensive findings of fact are summarized as follows:
 1. The complainants, Nancy Gyurko, Debra Remillard, Charlene Antonelli, and Lisa Bambikidou, are, or were, managerial employees of the City.
 2. Local 818, Council 4, AFSCME, was formed in 1992 and is the collective bargaining agent of the complainants and other management-level employees.
 3. Prior to being represented by Local 818, complainants, like other management employees who work for the City, were covered by a Management Resolution which set the terms of their salaries, benefits and other working conditions. Management Resolutions were voted on by the city council.
 4. The first collective bargaining agreement between Local 818 and the City was effective July 1, 1993, through June 30, 1995. The complainants' salaries were incorporated into this collective bargaining agreement (except for Antonelli, who became a member of Local 818 subsequently).
 5. Article XIV, Section 14.1 of the 1993-1995 collective bargaining agreement between Local 818 and the City required the City to "evaluate positions" and use the result of the evaluation for the basis of further negotiations.
 6. The City hired a consultant to perform an evaluation of all union and non-union management positions. After gathering information and conducting interviews with the employees and evaluating the CT Page 5687 City's position, the consultant presented the Job Study in November 1994.
7. The Job Study established points and position levels for each position evaluated.
 8. The Job Study was the subject of negotiations between Local 818 and the City. These negotiations reached an impasse in March 1996, and the parties entered into mediation efforts.
 9. When mediation efforts were unsuccessful, Local 818 and the City submitted the disputed issues from the 1995-1998 collective bargaining agreement to binding arbitration in July 1996.
 10. The arbitration panel, in a decision dated December 5, 1997, awarded a 2.5% general wage increase to all members of Local 818 for each year of the 1995-1998 contract. The decision also awarded wage equity adjustments to fourteen people in Local 818, including complainants, each in different amounts, retroactive to July 1, 1996.
 11. With the pending expiration of the 1995-1998 collective bargaining agreement, Local 818 and the City entered into negotiations for a successor contract.
 12. Local 818 and the City reached an agreement in August 1999 awarding each member of Local 818, including complainants, a 3% per annum increase for each year of the three-year contract, July 1998 to June 2001.
 13. There are currently twenty-eight management positions in the City. Nineteen positions are represented by Local 818. Seven positions are held by females, seventeen are held by males and four are vacant.
 14. Specifically with respect to complainant Gyurko, it was found that she currently holds the title of Director of Elderly Services, with a current salary of $47,209. CT Page 5688
 15. Gyurko went through the Job Study process and eventually received a point score of 53.
 16. Gyurko compares herself to the Superintendent of Streets as a male employee because that position and her position both received 53 points in the Job Study. The current salary of the Superintendent of Streets is $50,349.
 17. In the December 7, 1997, arbitration award Gyurko receive the standard 2.5% wage increase and two equity adjustment points of $1266 each.
 18. At the time of the filing of the complaint, the Superintendent of Streets received $49,879, while Gyurko received $41,458.
 19. With respect to complainant Remillard, it was found that she held the position of Nutrition Supervisor for the Elderly Nutrition Program and resigned in June, 1999. Her salary at that time was $37,785.
 20. Remillard participated in the Job Study evaluation, ultimately receiving 43 points.
 21. Remillard compares herself to the Assistant Superintendent of Streets, who received 40 points. Although currently vacant, the post of Assistant Superintendent of Streets is advertised as having an annual salary of $40,000.
 22. As a result of the December 5, 1997, arbitration award Remillard along with the other members of Local 818 received a 2.5% wage increase. Remillard also received two equity adjustments of $5045 each.
 23. When Remillard filed her complaint, her annual salary was $25,600, and that of the Assistant Superintendent of Streets was $39,981.
 24. Remillard also compares herself to another vacant position, Environmental Planner. This position received 40 points in the Job Study. That position paid $35,061 when Remillard filed her complaint. CT Page 5689
 25. With respect to complainant Antonelli, it was found that she held the position of Purchasing Agent with a current salary of $37,352.
26. Antonelli participated in the Job Study and received 43 points.
 27. Antonelli compares herself to the Assistant Superintendent of Streets, Environmental Planner, and Data Processing Manager.
 28. The Data Processing Manager received 40 points in the Job Study and currently receives a salary of $40,000.
 29. As a result of the December 7, 1997, arbitration, Antonelli, as did the other members of Local 818, received a 2.5% wage increase. She also received two equity adjustments of $1900 each.
 30. At the time of the filing of the complaint, Antonelli's salary was $31,894, and the Data Processing Manager's salary was $39,923.
 31. With respect to complainant Bambikido, it was found that Bambikido holds the position of Assistant Parks and Recreation Director, at a salary of $29,958.
32. Bambikido participated in the Job Study and received 34 points.
33. Bambikido compares herself to the position of Zoning Enforcement Officer.
34. The Zoning Enforcement Officer received 30 points in the Job Study.
 35. As a result of the December 5, 1997, arbitration, Bambikido and other members of Local 818 received a 2.5% wage increase. She also received an equity adjustment of $2516.
 36. At the time of the filing of her complaint, Bambikido was paid a salary of $21,528 and the Zoning Enforcement Officer was paid $33,753. CT Page 5690
(ROR, Volume 1, Item 1, pp. 2-8 (two sided).)
The human rights referee concluded that the CHRO, on behalf of the complainants, had not met the burden of proof required by the Equal Pay Act, Title VII or the Connecticut statutes and dismissed the complaint. (ROR, Volume 1, Item 1, p. 16 (back).) The CHRO has appealed from this dismissal. Since the CHRO alleged, and there is evidence in the record, that the complainants' right to equal pay had been denied, and the complaint was dismissed, aggrievement is found.
The court reviews the CHRO's claims on this appeal under the substantial evidence test. "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . ." (Citation omitted; quotation marks omitted.) Adrianiv. Commission on Human Rights Opportunities, 220 Conn. 307, 314-15
(1991).
 We begin our analysis by noting that our review of an agency's factual determination is constrained by the [UAPA]. Specifically, General Statutes § 4-183 (j) (5) mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . . We have interpreted the standard of review set forth in the act as limiting our review such that [w]ith regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . This substantial evidence standard is highly deferential. . . .
(Citations omitted; internal quotation marks omitted.) Salmon v. Dept. ofPublic Health Addiction Services, 58 Conn. App. 642, 660-61, cert. granted on other grounds, 254 Conn. 926 (2000); Ames Dept. Stores, Inc.v. Commission Human Rights and Opportunities, 45 Conn. Sup. 276, 283, aff'd, 48 Conn. App. 561, cert. denied, 245 Conn. 924 (1998) (in applying CT Page 5691 the substantial evidence test, court defers to agency's decision on matters of proof).
The human rights referee concluded that factually the complainants did not establish a prima facie case of a violation of the Equal Pay Act.[2]
The CHRO contests this finding by the referee. The Equal Pay Act provides: "No employer . . . shall discriminate . . . between employees on the basis of sex" by paying one lower wages for equal work "which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. . . ." 29 U.S.C. § 206 (d)(1).
The Equal Pay Act has certain accepted principles. First, the complainants do not have to prove intentional discrimination by the City in setting their salaries. Lenihan v. Boeing Co., 994 F. Sup. 776, 797
(S.D.Tex. 1998). The Act provides "a form of strict liability." Knightv. G.W. Plastics, Inc., 903 F. Sup. 674, 678 (D.Vt. 1995).
The complainants bear the burden of proving a prima facie case. "To establish a prima facie case under the Equal Pay Act ("EPA"), a plaintiff has the burden of proving that (1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the job; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances." Noel v.Medtronic Electromedics, Inc., 973 F. Sup. 1206, 1210 (D.Colo. 1997);Tidwell v. Fort Howard Corp., 989 F.2d 406, 409 (10th Cir. 1993).
In light of the findings by the human rights referee[3], the sole issue of controversy here is the requirement above that the claimants were "performing work which was substantially equal."
"Equal work is not to be construed broadly." Noel v. MedtronicElectromedics, supra, 973 F. Sup. 1210. "We can consider only those wage discrimination claims involving departures from equal pay for equal work. . . . Failure to furnish equal pay for comparable work or like jobs was held not cognizable. . . . Jobs must be substantially equal in terms of skill, effort, responsibility, and working conditions." (Citations omitted; internal quotation marks omitted.) Nulf v. International PaperCo., 656 F.2d 553, 560 (10th Cir. 1981); see also Gunther v. County ofWashington, 623 F.2d 1303 (9th Cir. 1979), aff'd, 452 U.S. 161,101 S.Ct. 2242, 68 L.Ed.2d 751 (1981).
In making the required comparison, the plaintiff "may establish that her job was substantially equal to those held by the [male employees] by relying on actual job performance and content rather than job titles, classifications or descriptions. . . . The issue. . . is whether her job CT Page 5692 and those of her male colleagues involved a common core of tasks or whether a significant portion of the two jobs is identical. . . ." (Citations omitted; internal quotation marks omitted.) Stopka v. Allianceof American Insurers, 141 F.3d 681, 685 (7th Cir. 1998). There must be a core similarity of skill, effort and responsibility. Id., 686.
The human rights referee concluded that the complainants had not introduced sufficient evidence of this core similarity. Before the referee, the CHRO, on behalf of the complainants, had relied upon four types of evidence. The first was the individual complaints initially filed with CHRO. (ROR, Volume 4, Items 69, 69a, 69b, and 69c.) The second was the testimony of each complainant. (ROR, Volume 6 and 7, Items 71 and 72.) The third was the job study. (ROR, Volume 8, Item 87, p. 1174.) The final type of evidence introduced by the CHRO was a series of job descriptions developed in October, 1994, one month before the job study was issued. (ROR, Volume 8, Items 78-86.) The CHRO argues on appeal that its evidence was sufficient to satisfy the EPA's prima facie case requirements and that therefore the referee erred.[4]
The court has reviewed the record and concludes that the there is substantial evidence to sustain the referee's decision on this point.[5]
The individual complaints are merely a general recitation that the complainants' rights under the Equal Pay Act have been violated. The job descriptions that list different tasks performed by the complainants and male managers add little proof.[6] Such descriptions of tasks (e.g., the Elderly Service Director must have knowledge of programs for the aging while the Superintendent of Streets must have a working knowledge of civil engineering) must be taken in conjunction with other more probative evidence. McMillen v. Mass. Society For Prevention of Cruelty toAnimals, 140 F.3d 288, 295 (1st Cir. 1998), cert. denied, 525 U.S. 1104,119 S.Ct. 870 142, L.Ed.2d 772 (1999). In McMillen, there was testimony from a supervisor of the plaintiff relating that she performed more technically difficult procedures than the male veterinarians in other scientific departments.
The complainants did describe their own daily tasks, but mostly their testimony consisted of pointing to the fact that the comparable male managers had received equal points to them in the job study, but were receiving more compensation. (ROR, Volume 7, Item 72, p. 907 (Gyurko); Volume 7, Item 72, p. 1045 (Remillard); Volume 7, Item 72, p. 1076 (Bambakidou); Volume 6, Item 71, p. 800 (Antonelli).) As complainant Remillard stated: "Because the points were derived from the knowledge, the responsibility, the budgetary equal factors, so when you compare equal factors of what you need to know and what you're responsible for, I feel that the pay should be the same." (ROR, Volume 7, Item 72, p. 1045.) CT Page 5693
This evidence convinced the referee that "Complainants have relied, almost solely, on the Job Study commissioned by the Respondent." (ROR, Volume 1, Item 1, p. 13 (back).) He found that the Job Study did not fully discuss the "effort" component of the prima facie test, and concluded, based upon Schultz v. Corning Glass, 319 F. Sup. 1161
(W.D.N.Y. 1970)[7], that the complainants failed to meet their burden of proof on this element. (ROR, Volume 1, Item 1, p. 14 (back).) While the CHRO argues that the job study may be read to discuss "effort," the court under the "highly deferential" standard of review, approves the conclusion of the referee.
The court adopts the statement of the referee that "[w]ithout more evidence concerning the job duties and responsibilities of the male management employees of the Respondent, I am left to speculate concerning whether these jobs are the same or similar for purposes of the Equal Pay Act." (ROR, Volume 1, Item 1, p. 15 (back).) See also Stopka v. Allianceof American Insurers, supra, 141 F.3d 686 (female did not prove similar skills to male comparable); Sprague v. Thorn Americas, Inc., 129 F.3d 1355,1365 (10th Cir. 1997) (plaintiff failed to produce evidence that her job functions were substantially similar to those of male assistant managers).[8]
The next question is whether the referee correctly concluded that the complainants failed to establish a case under Title VII.[9] Under Title VII, an employer may not "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."42 U.S.C. § 2000e-2 (a). Unlike an action under the Equal Pay Act, a plaintiff in a Title VII case for salary discrimination must "produce evidence of discriminatory animus" by the defendant. Belfi v.Prendergast, 191 F.3d 129, 139 (2d Cir. 1999).
As with any Title VII case, the plaintiff is not bound to prove discrimination by overt evidence, but may opt to present her case of salary discrimination under the formula of disparate treatment. McDonnellDouglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668
(1973); Ann Howard's Apricots Restaurant, Inc. v. Commission on HumanRights Opportunities, 237 Conn. 209 (1996) (stating equivalent Connecticut principle).
"A plaintiff establishes a prima facie case of a Title VII violation based on a disparity of wages by showing that she occupies a job similar to that of higher paid males." (Quotation marks omitted.) Glover v.Kindercare Learning Centers, Inc., 980 F. Sup. 437, 446 (M.D.Ala. 1997). The nature of the proof needed to establish that a job is similar CT Page 5694 is not the same under the Equal Pay Act and Title VII.
 Title VII incorporates a more relaxed standard of similarity between male and female-occupied jobs. . . . Thus, under Title VII, the plaintiff is not required to meet the exacting standard of substantial equality of positions set forth in the Equal Pay Act. . . . In Gunther, the Supreme Court specifically rejected the notion that only those sex-based wage discrimination claims that satisfy the equal work standard of the Equal Pay Act could be brought under Title VII. . . . To be actionable under Title VII, the work performed by the female employee need only be similar or comparable to that of a higher paid male employee. . . .
(Citations omitted, internal quotation marks omitted.) Lenihan v. BoeingCo., supra, 994 F. Sup. 799; see also Thompson v. City of Albuquerque,950 F. Sup. 1098, 1104 (D.N.M. 1996) (coverage of Title VII is broader than that of the EPA; more relaxed standard of similarity between male and female-occupied jobs); Noel v. Medtronic Electromedics, Inc.,973 F. Sup. 1206, 1212 (D.Colo. 1997) (similar working conditions met without showing equal skill, effort and responsibility).[10]
As with all Title VII litigation, once the plaintiff meets the prima facie case, the defendant must articulate a legitimate, non-discriminatory reason. McDonnell Douglas Corp., supra at 802. This burden on the defendant has been described in wage discrimination cases as "exceedingly light; the defendant must merely proffer non-gender based reasons, not prove them. . . ." (Citation omitted.) Sprague v. ThornAmerica, supra, 129 F.3d 1363; Thompson v. County of Albuquerque, supra,950 F. Sup. 1104. Then, the plaintiff may demonstrate that the "proffered reason [by the employer] was not the true reason for the employment decision either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. . . ." (Citations omitted; internal quotation marks omitted.)Glover v. Kindercare Learning Center, supra, 980 F. Sup. 447[11]
The referee refers to much of this law as stated above in his decision, (ROR, Volume 1, Item 1, p. 11 (back)), but he does not analyze the facts in the record under this burden-shifting test. He merely concludes that "[c]omplainants have failed to meet their burden of presenting a prima facie case [under Title VII and General Statutes §46a-60 (a)(1)]." (ROR, Volume 1, Item 1, p. 16.) "The Complainants have failed to produce any evidence that the Respondent paid them less than CT Page 5695 the male employees to whom they compare themselves because of an intentional act on the part of the Respondent." (ROR, Volume 1, Item 1, p. 16.)
This approach fails to note the differences between the Equal Pay Act on the one hand and Title VII and the Connecticut law on the other; and that there may be a finding for the employee under one act and not another. See Gunther v. County of Washington, 452 U.S. 161, 171,101 S.Ct. 2242,68 L.Ed.2d 751 (1981). After concluding that the complainants here did not satisfy the Equal Pay Act, the referee should have re-analyzed the evidence of record to see whether the other statutes were violated.
Therefore, the case is remanded to the CHRO. The CHRO is ordered to vacate the decision dismissing the case, and render a new decision based on the record, and consistent with this decision. See Cooper v.Commission on Human Rights Opportunities, Superior Court, judicial district of New Britain, Docket No. 496223 (Cohn, J., October 23, 2000).
Henry S. Cohn, Judge