In the

# United States Court of Appeals

### For the Seventh Circuit

No. 16-3830

MARYBETH LAUDERDALE,

*Plaintiff-Appellant*,

*v.*

ILLINOIS DEPARTMENT OF HUMAN SERVICES, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Central Division.
No. 13-CV-3062 — **Richard Mills**, *Judge*.

ARGUED SEPTEMBER 20, 2017 — DECIDED NOVEMBER 30, 2017

Before MANION and KANNE, *Circuit Judges*, and MILLER, *District Judge*.[*]

KANNE, *Circuit Judge*. Marybeth Lauderdale alleges she was paid substantially less than her male colleague despite taking on twice the responsibility. The Equal Pay Act, Title VII of the Civil Rights Act of 1964, and the Equal Protection

---

[*] The Honorable Robert L. Miller, Jr., of the United States District Court for the Northern District of Indiana, sitting by designation.

Clause of the Fourteenth Amendment prohibit state employers from paying an employee less based on her sex. However, the record indicates that the pay discrepancy in this case was not based on sex. Therefore, the district court's grant of summary judgment for the defendants-appellees is affirmed.

## I. BACKGROUND

Marybeth Lauderdale served as acting superintendent for the Illinois School for the Deaf ("ISD") from 2006 to 2007 and as superintendent from 2007 to 2010. During her last year as superintendent, she was paid a base salary of $83,856 plus a 5% bilingual pay bonus, for a total of $88,048. Reggie Clinton was superintendent for the School for the Visually Impaired ("ISVI") from 1998 to 2003 and again from 2008 to 2010. When Clinton returned to ISVI in 2008, he received a 1.9% salary increase from his most recent salary at the Arcola School District. He was paid, at the end of his tenure at ISVI, $121,116 per year.

In 2010, Clinton resigned. The Illinois Department of Human Services, which oversees ISD and ISVI, decided to create one combined superintendent role to cover both schools. The Department offered Lauderdale the role. Lauderdale wanted to be paid as much or more than Clinton had been paid; the Department counteroffered. Communications indicate that some Department employees believed Lauderdale was entitled to a large pay raise because she was taking on two roles. However, the same communications reveal budget constraints and a concern that the Department of Central Management Services would not authorize a 30% pay increase for a public employee. Eventually, Lauderdale accepted a salary

of $106,500, which was less than what Clinton was paid as superintendent of ISVI, but a 21% increase from Lauderdale's salary as superintendent of ISD.

Lauderdale filed a lawsuit alleging sex discrimination based on the difference between what she was paid and what Clinton had been paid. Specifically, she alleged a violation of the Equal Pay Act by the Department, and she alleged claims of sex discrimination by the Department and several individuals under Title VII and § 1983. Upon a review of the evidence, the district court concluded no reasonable juror could find the pay discrepancy was a product of sex discrimination. The court found that the discrepancy instead resulted from budget concerns and from the application of the Illinois Pay Plan. Furthermore, Lauderdale did not provide sufficient evidence for a jury to find these explanations were pretextual. Thus, the district court granted summary judgment in favor of the defendants on all counts.

## II.    ANALYSIS

We review the district court's grant of summary judgment *de novo* and in doing so construe all facts in the light most favorable to Marybeth Lauderdale, the non-moving party. *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 849 (7th Cir. 2015). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he ultimate question … is 'whether a reasonable jury could find prohibited discrimination.'" *Hooper*, 804 F.3d at 853 (quoting *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014)).

Because a plaintiff's burden of proof is different for Equal Pay Act claims than it is for Title VII and § 1983 claims, we review Lauderdale's Equal Pay Act claim first, then address her claims brought under Title VII and § 1983.

*A.  Equal Pay Act*

Lauderdale claims that the Department violated the Equal Pay Act when it paid her less than it paid Reggie Clinton. The Equal Pay Act prohibits an employer from discriminating between employees on the basis of sex. 29 U.S.C. § 206(d)(1). To establish a prima facie cause of action under the Act, an employee must demonstrate "a difference in pay for 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *King v. Acosta Sales & Mktg., Inc.*, 678 F.3d 470, 474 (7th Cir. 2012) (quoting 29 U.S.C. § 206(d)(1)). If this requirement is satisfied, the burden of proof shifts to the employer to prove some neutral factor that explains the discrepancy in salary. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974). The Act provides four affirmative defenses by which the employer can claim the discrepancy is not discriminatory: "where … payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

Lauderdale compares her role as dual superintendent with that of Clinton as superintendent of ISVI. Lauderdale took over all of Clinton's responsibilities in addition to those she had as a superintendent of ISD, so it is clear that she sufficiently alleged that she was paid less for work that was equal

to, if not more demanding than, the work performed by Clinton. "[D]ifferences in skill, effort, or responsibility" do not justify a finding that two jobs are not equal "where the greater skill, effort, or responsibility is required of the lower paid sex." 29 C.F.R. § 1620.14(a).

The Department concedes that Lauderdale has sufficiently established a prima facie case under the Act, but argues the pay discrepancy was based on non-discriminatory bases: Illinois's CMS Pay Plan, Lauderdale's and Clinton's prior salaries, and budget concerns.

### 1. Illinois's CMS Pay Plan

The Illinois Administrative Code sets forth a detailed pay plan for state employees. Ill. Admin. Code 80, § 310. Positions are assigned established salary ranges, and raises and bonuses are based on the established applicable range. Pay increases are based primarily on the employee's prior salary. Upon promotion, an employee's increase in pay is generally limited to 5% of the employee's current base salary. *Id.* § 310.460. The increase can be greater if necessary to meet the minimum rate of the salary range for a new position, but the increase cannot exceed the maximum rate of the salary range. *Id.* Any other increase greater than 5% is considered a "special salary adjustment," which must be approved by the Director of Central Management Services. *Id.*

Lauderdale claims there is no evidence in the record that the Department believed the pay plan applied when someone is hired for a newly created position. An employer's given explanation for a pay discrepancy must be supported by evidence that the employer actually relied on that reason. *King*, 678 F.3d at 474. Contrary to Lauderdale's assertion, the record

contains compelling evidence that the Department believed the pay plan was applicable. The documents submitted by the Department include forms establishing the new position, classifying the new position within the pay plan, and setting the salary range for the new position. (R. 58-13, at 1–4; R. 61-5, at 8–11.) Additionally, the record includes an email sent to Department officials regarding the creation of the dual superintendent position. (R. 61-7, at 6–7.) The email explains that Department employees were working with "Classification and CMS" and had submitted the job duties to CMS for classification. (*Id.*)

Lauderdale further argues that the Department did not adhere to the pay plan when determining her salary, because her pay was increased more than 5% and the Department failed to produce a decision memorandum, which is a required step in the process of seeking approval for a pay increase greater than 5%. But the record includes a CMS-163 "Special Salary Request" form, which indicates that the Department sought approval for the increase. (R. 58-11, at 1.)

### 2. *Prior Salaries*

Even if the Department did not strictly follow the pay plan, it is clear that prior salary was a factor in determining what increase was appropriate, and this court has repeatedly held that a difference in pay based on the difference in what employees were previously paid is a legitimate "factor other than sex." *Wernsing v. Dep't of Human Servs.*, 427 F.3d 466, 468 (7th Cir. 2005) (citing *Dey v. Colt Constr. & Dev't Co.*, 28 F.3d 1446 (7th Cir. 1994), *Riordan v. Kempiners*, 831 F.2d 690 (7th Cir. 1987), and *Covington v. S. Ill. Univ.*, 816 F.2d 317 (7th Cir. 1987)).

In *Riordan*, the employee alleged an Equal Pay Act violation based in part on the fact that her male subordinates were paid more than her. 831 F.2d 690. The subordinates' pay was higher because they had been paid more at their previous positions. *Id.* at 699. The court discussed how the use of seniority-based systems make it common in civil service settings for a subordinate to be paid more than his or her superior and concluded that a pay discrepancy created by reliance on employees' prior salaries is not a violation of the Equal Pay Act. *Id.* at 696–97.

Lauderdale's previous salary was significantly lower than Clinton's previous salary. Clinton had been paid $118,794 as superintendent of the Arcola School District before he returned to the Department as the superintendent of ISD. Lauderdale was paid $88,048 at her previous position as superintendent of ISD.

Basing pay on prior wages could be discriminatory if sex discrimination led to the lower prior wages, but Lauderdale has not asserted such a claim in this case. *See Wernsing*, 427 F.3d at 470–71.

### 3. Budget Concerns

The Department also explains that the pay decision was based on budget concerns. Of course, budget concerns are a part of every employment decision. The record in this case, however, details concerns beyond the normal attempts to balance budgets. Employees of ISD and ISVI, including Lauderdale, had been required to take furlough days and were aware that the schools might have to close entirely due to funding cuts. In 2009, a rally was held at the state capitol to protest the potential closing of the schools. Lauderdale and several of the

defendants spoke about the ongoing budget crisis and potential cuts in their depositions.

Lauderdale argues budget concerns could not genuinely be the basis for her lower salary because the Department was already eliminating one entire position by having her serve both roles. Additionally, the maximum rate for the dual superintendent salary range was set at $126,000. While it is true that the Department could have paid Lauderdale more and still saved money, it is not the role of this court to determine how agencies should spend their money, so long as they are not discriminating. *Wernsing*, 427 F.3d at 468 ("The statute asks whether the employer has a reason other than sex—not whether it has a 'good' reason.").

The record indicates that the Department was genuinely concerned about the budget when deciding to offer Lauderdale a salary lower than Clinton's. In an email to staff in the Governor's office, Michelle Saddler, director of the Department, asked for advice regarding Lauderdale's request for a 27.5% salary increase. (R. 58-14, at 1.) She wrote that she was "concerned that in the current climate, even 19% is pushing the limits of public acceptability." (*Id.*) The Chief of Staff to the Governor responded that, in light of the request, the Department should start interviewing other candidates. (*Id.*) In the same email chain, another Department employee referred to the potential of 6% budget cuts and the closure of ISVI, though she acknowledged closure was unlikely. (*Id.* at 2.)

If presented with this evidence, no reasonable juror could find that Lauderdale was paid less because of her sex. Therefore, the district court's grant of summary judgment in favor of the defendants on Lauderdale's Equal Pay Act claim will be affirmed.

## B. Title VII and Equal Protection

Lauderdale also asserts the alleged sex discrimination was a violation of Title VII of the Civil Rights Act of 1964 and a violation of her right to equal protection. Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation … because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1). "The equal protection clause of the Fourteenth Amendment protects individuals against intentional, arbitrary discrimination by government officials." *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 577 (7th Cir. 2014). An individual who is subjected to unconstitutional discrimination can seek relief from his or her employer under 42 U.S.C. § 1983. *See e.g. id.* at 575 n.3; *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744 (7th Cir. 2006).

To prove a claim of employment discrimination under Title VII and § 1983, a plaintiff must present sufficient evidence that she was a member of a protected class, she performed reasonably on the job in line with the employer's legitimate expectations, she was subjected to an adverse employment action, and similarly situated employees of the opposite sex were treated more favorably. *Burks*, 464 F.3d at 750. If that burden is met, the employer must articulate a "legitimate, nondiscriminatory reason" for paying the plaintiff less. *Id.* at 751. Unlike in an Equal Protection Act claim, however, the plaintiff maintains the burden of proof. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993); *see Fallon v. Illinois*, 882 F.2d 1206, 1213 (7th Cir. 1989) (liability under the Equal Pay Act does not prove a violation of Title VII). *But see id.* at 1213–14 (discussing opinions from other courts holding that Equal Pay Act liability automatically establishes Title VII liability).

If the employer articulates a nondiscriminatory reason for the pay discrepancy, the plaintiff must prove that the employer's justification was pretext for a decision made on prohibited criteria (here, sex). *St. Mary's*, 509 U.S. at 507–08; *Burks*, 464 F.3d at 751. If she cannot, her claim fails. *St. Mary's*, 509 U.S. at 507–08; *Burks*, 464 F.3d at 751. An employee can prove a reason was pretextual by showing that the reason was "1) factually baseless; 2) not the employer's actual motivation; 3) insufficient to motivate the action; 4) or otherwise pretextual." *E.E.O.C. v. Target Corp.*, 460 F.3d 946, 957 (7th Cir. 2006). On summary judgment, the plaintiff must present evidence that supports an inference that the employer was intentionally dishonest when it gave its nondiscriminatory reason. *Id.* at 960.

### 1. *Lauderdale's Initial Burden*

The defendants do not challenge Lauderdale's assertions that she is a member of a protected class, that she performed well, and that she was paid less than Reggie Clinton. Clinton and Lauderdale did not have identical roles, but for these purposes it is logical to consider them similarly situated. Factors relevant to the determination of whether employees are similarly situated include "whether the employees reported to the same supervisor, whether they were subject to the same standards and whether they had comparable education, experience and qualifications." *Burks*, 464 F.3d at 751. Lauderdale and Clinton answered to the same supervisor, Robert Kilbury. According to the job application for the dual superintendent role and Clinton's affidavit, the qualifications and education requirements for both positions were very similar. The dual superintendent position required a four-year college degree, master's degree and/or specialist degree, four years of

administrative experience, knowledge of the relevant regulations, and an administrative endorsement. Clinton had bachelor's, master's, and education specialist degrees; administrative experience; and a superintendent endorsement. Similarly, Lauderdale had bachelor's, master's, and education specialist degrees; experience as superintendent of ISD; and a superintendent endorsement.

Finally, as superintendents, Clinton and Lauderdale carried out many of the same duties. They were both expected to develop and direct the operations and activities of the schools, serve as policy-making officials, coordinate budgets, supervise employees, ensure compliance with state and federal regulations, review relevant legislation, and serve as representatives of the schools. The only difference is that Lauderdale held these responsibilities at two schools instead of one. Thus, Lauderdale submitted sufficient evidence to meet her initial burden.

2.  *The Department's Justifications*

The Department explains that budget concerns were the primary cause of the pay discrepancy. The Department also claims the pay plan and Clinton's and Lauderdale's prior salaries caused the pay discrepancy. In response, Lauderdale repeats many of the same arguments already discussed regarding whether these justifications were genuinely relied upon to make the salary decision. For the reasons already explained, Lauderdale's arguments fail.

In her attempt to prove the budget concern explanation was pretextual, Lauderdale points to her deposition statement that no one ever told her that budget concerns pre-

vented the Department from paying her more. But Lauder-dale's own statements in her deposition reveal that she was aware the Department was facing considerable budget concerns. She also acknowledged that budget concerns were discussed, but states that she did not think that the concerns were genuine. Email communications sent while the salary negotiations were on-going show the individuals involved were concerned about giving Lauderdale a very large pay increase in light of budget concerns and in light of concerns for how the public would react to such a large increase for a public employee at a time when other services were being cut.

Lauderdale also relies on the job posting for the dual superintendent position, which states that the maximum salary for the position was $126,000—$20,000 more than she was paid. The Department explains that the salary range listed on the bulletin reflects the maximum salary for all jobs in that classification, not what was actually budgeted for the dual superintendent role for that year. The bulletin itself states that the salary range listed is only a guide and that salary would be based on the individual's qualifications and the Department's salary plan. Therefore, Lauderdale has failed to provide enough evidence to convince a reasonable juror that the Department was lying when it said the salary decision was based on budget concerns.

### 3.  *Individual Liability*

Lauderdale further claimed that Governor Pat Quinn and various Department employees should be held personally liable for violating her rights under Title VII and the equal protection clause. She alleges that each person was individually responsible, at least in part, for the salary decision, yet offers no evidence that would support such a finding. These claims

largely rely on Lauderdale's assertion that the Department itself engaged in unlawful discrimination. Lauderdale fails to explain why the district court should have held the individuals liable even after it concluded that the Department itself did not engage in unlawful discrimination. Therefore, the district court was correct when it concluded that Lauderdale failed to provide sufficient evidence that would allow a reasonable jury to find that the governor and Department employees personally engaged in unlawful discrimination.

### III.    CONCLUSION

For the reasons above, we AFFIRM the district court's grant of summary judgment in favor of the defendants-appellees.