RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0077p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
────────────────

MARINA DEBITY,

        *Plaintiff-Appellant*,

    *v.*

MONROE COUNTY BOARD OF EDUCATION,

        *Defendant-Appellee*.

> No. 24-5137

Appeal from the United States District Court for the Eastern District of Tennessee at Knoxville.
No. 3:22-cv-00006—Jill E. McCook, Magistrate Judge.

Argued:  October 31, 2024

Decided and Filed:  April 2, 2025

Before:  GRIFFIN, KETHLEDGE, and BUSH, Circuit Judges.
────────────────

## COUNSEL

**ARGUED:**  Jesse D. Nelson, NELSON LAW GROUP, PLLC, Knoxville, Tennessee, for Appellant.  Arthur F. Knight, III, TAYLOR &KNIGHT, GP, Knoxville, Tennessee, for Appellee.  **ON BRIEF:**  Jesse D. Nelson, NELSON LAW GROUP, PLLC, Knoxville, Tennessee, for Appellant.  Arthur F. Knight, III, TAYLOR &KNIGHT, GP, Knoxville, Tennessee, for Appellee.

BUSH, J., delivered the opinion of the court in which KETHLEDGE, J., concurred, and GRIFFIN, J., concurred in the judgment.  GRIFFIN, J. (pp. 21–25), delivered a separate concurring opinion.

———————————

**OPINION**

———————————

JOHN K. BUSH, Circuit Judge.   Marina Debity brought claims against the Monroe County Board of Education for sex discrimination and retaliation in violation of the Equal Pay Act (EPA), Title VII of the Civil Rights Act of 1964 (Title VII), and the Tennessee Human Rights Act (THRA).   Debity alleges that the Board offered her a lower salary than it had paid Matthew Ancel for the same job two years earlier.   According to Debity, when she asked for the same salary as Ancel, the Board withdrew her job offer in retaliation.

A jury found that the Board did offer Debity less money for equal work, but for legitimate reasons having nothing to do with her sex.   It also found that the Board did not retaliate against Debity.   Based on these findings, she had no claim to damages.   Nevertheless, the jury awarded Debity slightly more than \$195,000, likely because of poor instructions on the verdict form.   The magistrate judge, presiding with the parties' consent, noticed the inconsistency between the damage award and the jury's finding of no liability but nonetheless dismissed the jurors without allowing the parties to object.

On appeal, we face two questions.   The first is what type of verdicts the jury returned. The second is whether the Board's affirmative defense, that it offered Debity less money for a reason other than sex, survives a motion for judgment as a matter of law.

We conclude that the magistrate judge presented the jury with a general verdict on the retaliation claims and a general verdict with interrogatories on the discrimination claims.   We also conclude that the jury's answers to the interrogatories on the discrimination claims are consistent with each other but inconsistent with the general verdict.   Though we reject the magistrate judge's classification of these verdicts as special verdicts, the Federal Rules of Civil Procedure still permit the magistrate judge's chosen course (entering judgment based on the interrogatories) under the correct classification, so we affirm it.

As for the Board's affirmative defense to the discrimination claims, we hold that two reasons in this case—(1) budget constraints and (2) market forces of supply and demand—each provide an independent basis to uphold the jury's verdict.  Both are legitimate business explanations for offering one employee less salary than another for the same position.  And both rationales have sufficient evidence in the record for a reasonable juror to find that those reasons, not Debity's sex, are why the Board offered her less money.

We therefore affirm the judgment below.

## I.

### A.  Facts of the Case

Marina Debity was a longtime, tenured education provider in the Monroe County school district.  She worked as a special education teacher starting in 2008 and later transitioned into a case manager role.  In 2018, she entered a postgraduate program to become a school psychologist while continuing to work full-time for Monroe County.  In 2020, as part of her postgraduate program, Debity interned for the district, a typical career path for school psychologists there.  Upon graduation, however, she learned from Trey Ferguson, Monroe County's Executive Director of Exceptional Education, that the district already had its four full-time psychologist roles filled.  Nonetheless, Ferguson told Debity that he would try to find room in the budget to add a fifth position.  He accomplished this, so on April 22, 2021, Debity applied for the new school psychologist position.

The Board uses a step system for paying school psychologists.  Those with more years of experience are paid at a higher step, which equates to a higher salary.  But candidates can negotiate the step at which they start.

That is what Matthew Ancel did.  He was the only man that Ferguson could remember who had ever applied for a school psychologist position.  Ferguson hired Ancel for the job in 2019, offering him a Step 5 salary, commensurate with his five years of experience working in a different capacity in the district.  Like Debity, Ancel applied to join Monroe County after completing an internship there.  And like Debity, he had no other experience as a school

psychologist.  Ferguson believed, but could not confirm, that Ancel received his Step 5 salary through negotiation after the district had offered a lower amount.  On appeal, Debity presents nothing in the record that suggests otherwise.

According to Ferguson, the hiring environment changed significantly from 2019 to 2021, when Debity applied.  Ferguson testified that, in 2019, the Board was "desperate" to hire a school psychologist.  Trial Proceedings Vol I, R. 77, PageID 1110.  The district needed four psychologists to meet students' needs.  Of the four on staff in 2019, one had announced he would retire, and the other had dropped to part-time to pursue a doctorate degree.  According to Ferguson, these developments put the Board in a position where it had to yield to Ancel's salary demands at a time when the district had the funding available to do so.  By contrast, in 2021, the district already had four full-time psychologists on staff.  Ferguson testified it was all he could do to squeeze $60,000 out of the annual budget to create the fifth psychologist position for which Debity applied.

On May 13, 2021, Ferguson offered her that new job, but they failed to agree on the salary.  On May 24, Debity told Ferguson that she had received offers from Meigs County and Blount County of $66,000 and $64,000, respectively.  On May 25, Debity asked Dr. Kristi Windsor, Ferguson's supervisor, for a Step 5 salary, noting that it was the pay level where Ancel had started with his five years of experience in a capacity outside psychology.  Debity also noted that she had thirteen years of non-psychology experience, so she should be paid at least as much as Ancel.  But her arguments did not persuade.  On May 26, Dr. Windsor made Debity her final offer: a Step 3 salary of $61,077.56—higher than the $60,000 Ferguson had budgeted for, but less than what Debity would accept.

Ferguson testified that not only did he struggle to find $60,000 in the budget to hire a fifth psychologist, but he also fought for the Board's approval of the Step 3 salary offer because he wanted very much to hire Debity.  Ferguson budgeted for the fifth school psychologist position in part by replacing a retiring special education teacher at Coker Creek Elementary School with a lower-paid teaching assistant.  He testified that sometime in the middle of the negotiations with Debity, Dr. Windsor informed him that the Board demanded he fill the Coker

Creek position with a full-time teacher.  This development meant he could no longer afford Debity's position.

By May 28, two days after Dr. Windsor gave her ultimatum, Debity had accepted the $64,000 offer from Blount County, which credited all thirteen years of her prior experience.  The job posting for a school psychologist was removed from Monroe County's website on June 4, and a position for a full-time teacher at Coker Creek was posted on July 9.

**B.  Procedural History**

Debity sued the Board in the Eastern District of Tennessee on January 5, 2022.  The Board moved for summary judgment, which the magistrate judge denied on March 8, 2023.

The trial started on May 22.  On the third day of the trial, the magistrate judge held a charge conference with counsel.  They discussed the jury instructions at length, but not a word was spent on the verdict form.  The jury instructions did not give the jurors detailed guidance for filling out the verdict form.  The magistrate judge submitted the case to the jury that afternoon.

Debity claims on appeal, and the Board does not rebut, that the magistrate judge submitted the verdict form to the jury without showing the final version, formulated by the magistrate judge, to counsel first.  This matters because, on April 3, about seven weeks before trial, Debity had filed a stipulated verdict form.  The magistrate judge's verdict form differs from the stipulated version in a salient way.  The line of the magistrate judge's form that says, "[i]f you answer 'No' to Question 1(a) and Question (2), you do not need to answer Question 3" replaced a line in the stipulated verdict form that said, "[i]f your verdict is for the Defendant, you do not need to answer question [3]."  R. 49, PageID 301.  The magistrate judge's version of the form had the potential to confuse jurors—it did not tell them what to do about Question 3 if they answered "yes" to both Questions 1(a) and 1(b).  And the parties had no opportunity to object.  Printed below is the text of the verdict form as used at trial and completed by the jurors.

1.  Discrimination in violation of the Equal Pay Act, Title VII of the Civil Rights Act, and the Tennessee Human Rights Act:

    a.  Did the Plaintiff prove by a preponderance of the evidence that the Defendant used a lower wage scale for setting a wage than the wage of a male and the jobs at issue involved substantially equal skill, effort, and responsibility?

        _____✓_____ Yes          _____ No

        If yes, go to section b. If no, skip section b and proceed to Question 2.

    b.  Did the Defendant prove by a preponderance of the evidence that any pay disparity was due to a factor other than sex that was specifically chosen for a legitimate purpose?

        _____✓_____ Yes          _____ No

2.  Retaliation in violation of the Equal Pay Act, Title VII of the Civil Rights Act, and the Tennessee Human Rights Act:

    a.  Did the plaintiff prove by a preponderance of the evidence that she engaged in legally protected activity for which the Defendant took a materially adverse employment action against her?

        _____ Yes          _____✓_____ No

        If you answer "No" to Question 1(a) and Question (2), you do not need to answer Question 3.

3.  If your verdict is for the plaintiff on either her discrimination or her retaliation claim, what is the amount of damages to allow for each of the following categories:

    Compensatory damages:        $_____5,875_____

    Economic losses (back pay):  $_____50,000_____

    Future losses (front pay):   $_____139,171.59_____

The jury returned this verdict the day after receiving the form. The foreperson handed the verdict form to the magistrate judge, who asked the clerk to read it aloud. But before the clerk could do so, the magistrate judge asked the clerk to stop and called for a five-minute, unexplained recess.

About twenty minutes later, the magistrate judge called the court back into session.  The magistrate judge then returned the verdict form to the clerk, who finally read it aloud.  Without talking to counsel, the magistrate judge polled the jury.  After every member of the jury had raised his or her hand, the magistrate judge thanked the jurors for their service and dismissed them.  The jurors had checked "yes" in boxes 1(a) and 1(b), "no" in box 2(a), and awarded compensatory damages of $5,875; economic losses of $50,000; and future losses of $139,171.50.  That totals to $195,046.50.

It was at this point, *after* the jurors were dismissed, that the magistrate judge addressed the parties for the first time since exiting recess.  "So, the parties may now understand why I took a break to take a look at the verdict form," the court said.  Trial Proceedings Vol IV, R. 70, PageID 948.  The court then explained the apparent inconsistency in the jury's verdict.  When the court asked the parties to respond, Debity's counsel objected.  This objection was timely under Rule 51(c)(2)(B) because Debity could not have known that the court gave the jury a verdict form that differed from the stipulated one.

On June 13, Debity timely filed motions for judgment as a matter of law and for a new trial due to the inconsistent verdict.  The magistrate judge denied these motions.  Of particular importance, the court held that all the questions on the verdict form were special verdicts.  *See Debity v. Monroe Cnty. Bd. of Educ.*, No. 3:22-CV-6-JEM, 2024 WL 2703758, at *2 (E.D. Tenn. Jan. 26, 2024).  Pursuant to Rule 49(a), the court reconciled the verdicts by throwing out the award of damages and finding for the Board on all the claims.  *See id.* at *3.

On appeal, Debity asks for a new trial under Rule 49(b)(4), asserting that the verdict form is a general verdict with interrogatories where the interrogatories are inconsistent with each other and with the general verdict.  Debity also moves for judgment as a matter of law on the Board's affirmative defense, which applies to the discrimination claims only.

**II.**

We review motions for a new trial under an abuse of discretion standard, with underlying legal questions reviewed de novo.  *See Pittington v. Great Smoky Mountain Lumberjack Feud,*

*LLC*, 880 F.3d 791, 798–99 (6th Cir. 2018). Classifying a verdict is a legal question, so we review de novo the magistrate judge's finding that it asked the jury for special verdicts only. *Delaware & Hudson Ry. Co., Inc. v. Knoedler Mfrs., Inc.*, 805 F. App'x 149, 152 n.3 (3d Cir. 2020). The understanding at trial of the judge or the parties may provide evidence of a verdict's classification, but it is not dispositive. *See Lavoie v. Pac. Press & Shear Co.*, 975 F.2d 48, 54 (2d Cir. 1992) (holding the verdict to be a different classification than that labeled on the verdict form, and collecting cases); *contra Floyd v. Laws*, 929 F.2d 1390, 1396 (9th Cir. 1991) ("[T]he interrogatories . . . constituted a special verdict, simply because that is what the trial court declared them to be.").

We review motions for judgment as a matter of law de novo. *See Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 545 (6th Cir. 2012). We view all evidence in a light most favorable to the nonmoving party, affording them all reasonable inferences. *See id.*

## III.

Here is the problem. The Federal Rules of Civil Procedure intuit three types of verdicts: general verdicts, special verdicts, and general verdicts with interrogatories. Each iteration gives the judge distinct responsibilities. The magistrate judge ruled that she presented only special verdicts to the jury. If so, then the court had discretion to reconcile inconsistent verdicts per Rule 49(a). Debity argues the verdicts fall under Rule 49(b)(4)—general verdicts with interrogatories where the interrogatories conflict with each other and with the general verdict. If Debity is correct, the magistrate judge had no discretion to reconcile inconsistencies and should have ordered a new trial. Therefore, it matters how we classify the verdicts.

General verdicts "simply ask the jury" to say who wins, and if it's the plaintiff, to say how much she gets. *Turyna v. Martam Constr. Co., Inc.*, 83 F.3d 178, 181 (7th Cir. 1996); 3 William Blackstone, Commentaries *377 ("in which they openly declare to have found the issue for the plaintiff, or for the defendant; and if for the plaintiff, they assess the damages"). Who wins can be specific to each claim; a general verdict need not proclaim whether the defendant has any liability at all. "The key is not the number of questions on the verdict form, but whether

the jury announces the ultimate legal result of each claim." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1031 (9th Cir. 2003).

Special verdicts ask the jury for "special written finding[s] on each issue of fact" submitted to it. Fed. R. Civ. P. 49(a); 3 William Blackstone, Commentaries \*377 ("herein they state the naked facts, as they find them to be proven, and pray the advice of the court thereon").[1] If the court asks the jury for special verdicts, then it becomes the role of the court to decide whether there is liability, which it does by applying the law to the jury's factual findings. *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1520 (6th Cir. 1990).

Special verdicts can cover a wide range of jury questions. When the Rules were promulgated in 1938, "issue of fact" was a term of art with a broad meaning. *See* Robert Dudnik, *Special Verdicts: Rule 49 of the Federal Rules of Civil Procedure*, 74 Yale L.J. 483, 484 n.2 (1965). Scholars of that era discussed two categories of fact that a court could ask a jury to find: evidentiary and ultimate facts. *See* Edson R. Sunderland, *Verdicts General and Special*, 29 Yale L.J. 253, 261 (1920). Questions of evidentiary fact were what we today would consider the purest questions of fact, like whether a driver ran a red light or wore a seatbelt. Dudnik, *supra*, at 484 n.2. Questions of ultimate fact asked the jury to combine evidentiary facts and then apply a legal norm. *See id* at 493 n.45 ("legal definitions . . . must be applied to the evidentiary facts in order to derive the ultimate facts"). For example, issues like waiver, proximate cause, last clear chance, and undue influence were thought to be ultimate facts. *See id.* at 493; Abner Eddins Lipscomb, *Special Verdicts under the Federal Rules*, 25 Wash. U. L. Q. 185, 199 (1940); *see also Bills v. Aseltine*, 52 F.3d 596, 605 (6th Cir. 1995) (discussing interrogatories on reasonableness, good faith, and proximate cause). Scholars of that era believed these mixed issues of fact and law were fit to be called issues of fact even though they required the jury to apply law. *See* Lipscomb, *supra*, at 195; Sunderland, *supra*, at 266; Dudnik, *supra*, at 494.

Questions of ultimate fact differ from general verdicts because the court still must apply additional law to the jury's findings to determine liability. *See Portage II*, 899 F.2d at 1520

---

[1]"Although the amount of damages is an issue of fact, this fact is specifically determined by the jury even under a general verdict form. Asking only this question cannot transform a general verdict into one under Rule 49(b) [that is, a general verdict with interrogatories]." *Turyna*, 83 F.3d at 182.

("under the special verdict system, the jury makes formal findings on issues of ultimate fact and the court applies the law"). In contrast, when a court asks for a general verdict (with or without interrogatories), it leaves the question of liability to the jury. Rule 49 highlights this distinction: Rule 49(a) discusses the court rendering "its judgment," evincing its independent role after requesting a special verdict, while Rule 49(b) says the court "must approve . . . an appropriate judgment on the verdict and answers," evincing its lack of independence after requesting a general verdict.

To see this distinction in action, imagine a negligence suit where the parties have stipulated to every issue except proximate cause. The court would instruct the jury on the legal meaning of proximate cause and ask it to decide only that question based on the facts adduced at trial. This would be a special verdict because the jury was not asked to decide the negligence claim in whole. Indeed, the jury could not decide liability in whole because it would not know that negligence also requires a duty and a breach of that duty. The court would have to make that decision for itself based on the stipulated facts. What matters is whether the jury decided liability in whole—a single discrete issue cannot form the basis for a general verdict, even if that issue is dispositive to the liability analysis.

A general verdict with interrogatories combines a general verdict with factual questions that would, standing alone, be special verdicts. Indeed, we can see Rule 49(b) interrogatories are equivalent to special verdicts because the text of the Rules limits both to "issues of fact." *Compare* Fed. R. Civ. P. 49(a)(1), *with* Fed. R. Civ. P. 49(b)(1). The only difference is how we name them. If a court asks for a general verdict, then any factual question is an interrogatory. If it does not, then any factual question is a special verdict. Adding interrogatories to a general verdict helps a jury "give close attention to certain factual matters," *Bills*, 52 F.3d at 605, and "serve[s] to check the propriety of the general verdict" through the safeguards Rule 49(b) provides, *Portage II,* 899 F.2d at 1520.

In sum, a court asks for a general verdict when it asks the jury to declare the ultimate result of a claim. Examples include "Title VII violation: for plaintiff/defendant" and "Did the defendant violate Title VII? Yes/No". A court asks a jury to find a special verdict or interrogatory in scenarios short of that, like when the court poses questions of evidentiary or

ultimate fact.  And when a judge asks for a general verdict and answers to questions, we call these questions interrogatories.  When the judge only asks for answers to questions, we call them special verdicts.

## A.  Whether a General Verdict is Present

We now address whether the magistrate judge called for a general verdict on each of discrimination and retaliation.  We hold that she did for both.

The jury instructions provide the best evidence.  We "evaluate the verdict form in the context of the instructions as a whole" because the jury instructions are the "user manual" for the verdict form.  *Moody v. United States*, 958 F.3d 485, 491 (6th Cir. 2020).  "In other words, we must determine whether the instructions and the verdict sheet required the jury to make a finding on the ultimate question of liability."  *Knoedler*, 805 F. App'x at 153.

The jury instructions here were written to be paired with general verdicts.  In multiple places they ask the jury to find for the plaintiff or defendant, evincing that the court wanted the jury to make the final call on liability, not reserve that decision for itself.  *Cf. Turyna*, 83 F.3d at 181.  For example, the instructions tell the jury "[y]ou must decide for yourselves if plaintiff has proven her claims," Trial Proceedings Vol III, R. 79 at PageID 1634, and that "your second duty is to take the law that I give you, apply it to the facts, and decide if plaintiff has proven her claims," *id.* at PageID 1609.  The instructions also tell the jury that it must consider the question of damages "if you return a verdict in the plaintiff's favor."  *Id.* at PageID 1626.

The verdict form itself also has indicia of general verdicts.  Question 3 asks the jury to award damages, "[i]f your verdict is for the Plaintiff on either her discrimination or her retaliation claim."  That sentence is exactly what one would expect to see on a general verdict form.  Indeed, the Third Circuit has held that a damages question phrased this way suffices to show a general verdict because it shows that an award of damages depends on a finding of ultimate liability.  *Stanton by Brooks v. Astra Pharm. Prods., Inc.*, 718 F.2d 553, 574 (3d Cir. 1983) (holding the following standalone question to be a general verdict: "If you determine that any of the defendants are liable in damages to plaintiff, what compensatory damages do you

award?").  It has also found a general verdict when a district court asked the jury to apportion damages between parties:

> Implicit in the apportionment of fault . . . is a *liability* finding, the ultimate question here.  In other words, the jury *necessarily* decided the ultimate question of liability on the . . . claim in apportioning liability for it.

*Knoedler*, 805 F. App'x at 153 (emphasis in original); *see also Team Contractors, LLC v. Waypoint Nola, LLC*, 976 F.3d 509, 520–21 (5th Cir. 2020) (finding a general verdict when the jury was asked to "fully explain[] who prevails on all claims" even though there was not a specific general verdict question).

We respectfully part ways with the concurrence's conclusion that the jury rendered special verdicts.  Contrary to what the concurrence implies, a verdict form need not explicitly state that it is a general verdict to be properly characterized as such.  *See Jarvis v. Ford Motor Co.*, 283 F.3d 33, 56 (2d Cir. 2002) ("where a jury is instructed to apply legal principles and assign liability, the answers to the questions submitted to the jury are not special verdicts, despite the use of those words in the title appended to the form" (quotation omitted)).  The relevant question is what type of verdict the jury returned.  Both the jury instructions and the verdict form can help answer that question.  *See, e.g., Portage II*, 899 F.2d at 1521 (appeals court using the jury instructions to help classify the verdict); *Bills*, 52 F.3d at 605 (same); *see also Slaughter v. Parker*, 450 F.3d 224, 241 (6th Cir. 2006) (considering instructions to determine whether verdict form contained error); *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 997 (6th Cir. 2012) (same).  And the concurrence cites no authority to the contrary.  We believe the jury instructions illustrate what the verdict form struggles to say clearly: the magistrate judge asked the jury to return general verdicts.

For its part, the Board relies heavily on *Freeman v. Chicago Park District*, 189 F.3d 613 (7th Cir. 1999) to support its claim that the questions here are special verdicts.  The *Freeman* court faced a special verdict form where the jury had awarded damages despite answering the other special verdicts in a way that precluded a finding of liability.  *Id.* at 615.  The panel held that in the context of special verdicts, courts should only view a jury's finding of damages as a determination of "the loss suffered by the plaintiff."  *Id.* at 616.  In that context, the *Freeman*

court held it to be the judge's job to apply the law to the facts and determine whether this loss is actionable. *Id.*

*Freeman* does not help us because it addressed how to reconcile inconsistent special verdicts, not how to classify verdicts in the first instance. Indeed, the *Freeman* court *assumed* that the questions were special verdicts. *Id.* at 614. It would be unwise to try to reconstruct how the *Freeman* court arrived at its assumption with only the information provided in the opinion. The court did not discuss the jury instructions—it only reprinted the verdict form. Also, the verdict form did not suggest that the damages award depended on a finding in the plaintiff's favor, as is the case here. Finally, even if the *Freeman* court would approve of the magistrate judge's course of action below, it would not answer the antecedent question of whether the verdicts returned were special verdicts.

## B. Classifying the Discrimination Questions

Because we hold that the district court asked the jury for general verdicts on both the discrimination and retaliation claims, we now analyze whether the court asked for general verdicts only or general verdicts with interrogatories per Rule 49(b) for each of discrimination and retaliation.

We take the discrimination questions first. Questions 1(a) and 1(b) are questions of ultimate fact because each question on its own is insufficient to "fully resolve[]" Debity's discrimination claim. *Team Contractors*, 976 F.3d at 520. Question 1(a) cannot stand alone because finding that Debity met her burden could not create liability without knowing whether the Board failed to prove its affirmative defense. And while, as here, a finding that the Board succeeded on its affirmative defense would be dispositive, that would not be true if the jury found the other way, so Question 1(b) does not stand alone either. Therefore, these questions can only be special verdicts or interrogatories. And because there is a general verdict, these questions must be interrogatories per Rule 49(b).

We now turn to the apparent inconsistency in the interrogatories. It is obvious that the general verdict conflicts with the interrogatories. By awarding damages, the jury found in Debity's favor on its general verdict. *Cf. Stanton by Brooks*, 718 F.2d at 574. Yet, it also found

that the Board proved its affirmative defense.  This is an irreconcilable inconsistency because, as a matter of law, the jury cannot find that the Board proved its affirmative defense but is liable nonetheless.  Our duty is to reconcile the jury's findings when possible, not to choose between them.  *See Am. Cas. Co. of Reading, Pa. v. B. Cianciolo, Inc.*, 987 F.2d 1302, 1305 (7th Cir. 1993) ("there is no priority among inconsistent verdicts—the judge may not assume that the first answer is the 'authentic' one with which later answers must be reconciled").

Debity argues that the jury's responses to the discrimination questions fall under Rule 49(b)(4) because the interrogatories conflict with each other and with the general verdict.  But the interrogatories are not inconsistent with each other.  It is plainly consistent for the jury to find that Debity proved a pay disparity, but that the Board proved there was a legitimate purpose.  None of the caselaw Debity cites suggests otherwise.  We therefore hold that the interrogatories for the discrimination claims are inconsistent with the general verdict, but not with each other.

As a result, the discrimination claims fall under Rule 49(b)(3).  According to this subsection, a court may either (1) enter judgment based on the answers to the questions notwithstanding the general verdict, (2) direct the jury to continue deliberating, or (3) order a new trial.  The second option is unavailable at this point.  The Rules do not make clear whether it would be proper for us to remand the choice between the remaining two options to the magistrate judge or whether we can make the decision ourselves.

Fortunately, we need not answer the question.  When the magistrate judge erroneously classified these verdicts as special verdicts, she entered judgment based on the answers to Questions 1(a) and 1(b), in effect ignoring the jury's answer to Question 3.  Based on how we have classified the questions on the verdict form, this is exactly what the magistrate judge would do if she were entering judgment based on the answers in accordance with Rule 49(b)(3)(A).  We have no trouble holding that remand is unnecessary because it is clear that the magistrate judge would enter judgment based on the answers to Questions 1(a) and 1(b) notwithstanding the general verdict as reflected in Question 3.  Therefore, despite classifying these verdicts differently than the magistrate judge did, we can nevertheless affirm the judgment on the discrimination claims.

**C. Classifying the Retaliation Question**

We now address whether Question 2(a) is an interrogatory or part of a general verdict together with Question 3. We hold that it is part of the general verdict because, taking its text and relevant jury instructions together, the question asks the jury to declare the winner of the claim in whole.

Considered on its own, the verdict form gives conflicting signals. On the one hand, Question 2(a) appears to collect many facts that the jury needs to consider into one question of ultimate fact. *See* Dudnik, *supra*, at 502–3. Nor is there any explicit question on the verdict form asking the jury to rule for either party on this claim. On the other hand, the preface to Question 2(a) says the question is about violating the statutes through retaliation. Further, it makes sense for the only question under the retaliation subheading to be a general verdict on that claim. And, as discussed previously, the court premises an answer to Question 3 on a finding of liability.

Once one considers the jury instructions, it becomes clear again that the court asked for a general verdict. The magistrate judge instructed the jury to determine "whether plaintiff has established her retaliation claim." Trial Proceedings Vol. III, R. 79, PageID 1611. The magistrate judge also instructed the jury on the three "elements" required "to establish the claim of unlawful retaliation." *Id.* at PageID 1625. The court roughly incorporated all these elements into the question on the verdict form. While the question appears at first light to be written as a question of ultimate fact, it merely restates the court's definition of retaliation from the jury instructions. Properly understood, this question asks the jury to decide the retaliation question in whole—the mark of a general verdict.

One might respond that the court asked the question in a factual manner instead of plainly asking for a general verdict. But the factual framing of the question does not compel a contrary outcome: the court probably framed the question this way to remind the jury of what it must consider when deciding the entirety of the claim, not to reserve for the court the job of applying the law to the facts. *Cf. Bills*, 52 F.3d at 605 ("The verdict form served only to direct the jury's attention to the most important issues[.]"). And even if that is not in fact the case, it should make

no difference that the court modified a general verdict question, like "do you find for plaintiff on the claim of retaliation," to sound slightly closer to a question of fact, like "do you find that the plaintiff proved all the elements of retaliation." *See Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 465 n.2 (6th Cir. 1999) (Parties agreed the following question asked for a general verdict "Did the defendant discriminate against the plaintiff by terminating her on the basis of her disability, in violation of the Americans with Disabilities Act?"). When "the answers to written questions require jurors to apply the instructed law to their fact-findings, thereby *fully explaining who prevails*," there is a general verdict. *Team Contractors*, 976 F.3d at 520 (emphasis added).

Having found that Question 3 and Question 2(a) form a general verdict, we hold that the verdict is a consistent one in favor of the Board.

We conclude also that when the jury awarded damages in Question 3, it did so only for the discrimination claims. One might ask whether we should interpret the jury's award of damages to be at least partially for retaliation. That would create an irreconcilable contradiction where the jury finds no liability but awards damages. *See Turyna*, 83 F.3d at 181 ("It would do just as much violence to the jury's factual findings to give primacy to its answer on the liability issue, ignoring its response on damages, as it would to do the reverse."). We reject such a reading because it is our duty, where possible, to interpret the jury's responses as harmonious. *Cf. Gallick v. Baltimore & Ohio Ry. Co.*, 372 U.S. 108, 119 (1963) (In the context of interrogatories, "it is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them[.]"); *see also B. Cianciolo*, 987 F.2d at 1306 ("[W]e should do what we can to save the verdict against the specter of inconsistency."). Because the jury did not state its basis for damages, we may infer one that is harmonious with the other answers on the verdict form.

**IV.**

Debity also moves for judgment as a matter of law on the question of whether the Board made a successful affirmative defense to the discrimination claims. In this posture, we are "not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences." *Tennant v. Peoria & P. U. Ry. Co.*, 321 U.S. 29, 35 (1944). If "a

reasonable juror could reach the challenged verdict," we will not disturb it.  *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 821 (6th Cir. 2000).  We affirm the magistrate judge's denial of the motion because a reasonable juror could find that the Board offered Debity a lower salary than Ancel's for a reason other than sex.

The EPA prohibits paying employees of one sex lower wages than are paid to the opposite sex for equal work.  *See* 29 U.S.C. § 206(d)(1).  There is a catch-all exception: when the pay differential is due to a factor "other than sex."  *Id.*  This "does not include literally any other factor, but a factor that, at a minimum, was adopted for a legitimate business reason."  *E.E.O.C. v. J.C. Penney Co., Inc.*, 843 F.2d 249, 253 (6th Cir. 1988).  In this respect, Title VII and the THRA work the same as the EPA.  *See Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 508 (6th Cir. 2021) (Title VII); *Kirkland v. City of Maryville*, 54 F.4th 901, 910 (6th Cir. 2022) (THRA).

In his testimony, Ferguson pointed to two reasons for offering Debity less than Ancel: budget constraints and a different supply and demand for the times in which Debity and Ancel applied for their jobs.  Either of these is a legitimate business reason to offer Debity less than Ancel.  Therefore, either is sufficient to uphold the jury's verdict.

**A.  Budget Constraints**

We do not read the EPA to "preclude cost-savings as a legitimate business justification for the [] government" "as long as it is not based upon the lesser cost of employing one sex versus the other."  *Lissak v. United States*, 49 F. Cl. 281, 287 (2001).  Consequently, we have "no trouble concluding that an employer's desire to save money constitutes a legitimate business related reason."  *Id.*  If a reasonable juror could believe that the Board was "genuinely concerned about the budget," then their affirmative defense survives.  *Lauderdale v. Ill. Dep't of Hum. Servs.*, 876 F.3d 904, 909 (7th Cir. 2017).

Ferguson's testimony meets this bar.  Ferguson testified that he tried to find enough room in the budget to hire Debity as a fifth psychologist but could not because it was a higher priority to hire a full-time teacher at Coker Creek Elementary School.  Even without the Coker Creek issue, Ferguson testified that he still would not have had the money to pay Debity the higher salary she requested (and later received from another county) because to even offer her a Step 3

salary stemmed from him "trying to give her everything we possibly could." Trial Proceedings Vol I, R. 77, PageID 1160.

Debity argues this does not matter because the Board could have taken unused funds from elsewhere in the budget to pay Debity. However, even if "the [County] could have paid [Debity] more . . . it is not the role of this court to determine how agencies should spend their money, so long as they are not discriminating." *Lauderdale*, 876 F.3d at 909. It is irrelevant whether the Board's budgeting decision was wise or even based on a correct understanding of the facts. The EPA does not outlaw incompetence—it prohibits discrimination by sex. *See Timmer v. Mich. Dep't of Com.*, 104 F.3d 833, 843–44 (6th Cir. 1997) (holding that an employer can succeed on their affirmative defense even when a mistake caused the pay disparity).

## B. Supply and Demand

"Unequal wages that reflect market conditions of supply and demand are not prohibited by the EPA." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1322 (9th Cir. 1994). Just because relying on supply and demand "might lead to wage decisions based on factors unrelated to an individual's qualifications for a particular job, such policies are not necessarily gender biased." *Taylor v. White*, 321 F.3d 710, 718 (8th Cir. 2003).

Take this case. Ferguson testified that when the school district hired Ancel, the Board was desperate because one of their four psychologists announced his retirement, and another moved to part-time. This "would have left [the Board] in a real bind." Trial Proceedings Vol I, R. 77, PageID 1110. According to Ferguson, "it was a hard-to-staff position. We had no applicants for the position. We were in desperate need of a school psychologist at that time, and so we hired Mr. Ancel based on whatever was negotiated." *Id.* at PageID 1110–11.

In other words, Monroe County had a high demand for a psychologist in 2019 and a supply of one person, Ancel, to fill it. A reasonable juror could believe that this put the Board in a position where it needed to offer Ancel a higher salary than it would when there was a less urgent need to hire a psychologist, like in 2021 when Debity applied.

The reasoning here is like that in *Horner v. Mary Institute*, 613 F.2d 706 (8th Cir. 1980). There, a headmaster wanted to hire a certain male teacher. The headmaster offered him the same salary as the other teachers, but this teacher asked for more. The headmaster matched the demand for a higher salary, which the court found justified because he was "the best person available for the job and because a higher salary was necessary to hire him." *Id.* at 714. The male teacher in *Horner* is like Ancel. It was not discrimination against Debity or the other female school psychologists to pay him more when that is what supply and demand in 2019 required.

When Debity applied, in contrast, Monroe County "was already fully staffed with psychologists," according to Ferguson. Trial Proceedings Vol I, R. 77, PageID 1160. There were already four full-time psychologists on staff and the Board had never hired five before. It would be reasonable for a juror to conclude that Monroe County had a low demand for psychologists in 2021 with the same supply, one person, to fill the opening. Therefore, a reasonable juror could believe that market forces of supply and demand caused Debity's lower offer, not her sex.

Now, to be clear, an employer may not use supply and demand as an excuse to discriminate generally by sex just because there are more people from a certain sex applying for a given job. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 205 (1974) (rejecting an affirmative defense when the "differential arose simply because men would not work at the low rates paid women . . . and it reflected a job market in which Corning could pay women less than men"). But by Ferguson's account, this sort of generalized discrimination is not what happened here. He would have treated a woman applying in 2019 as he treated Ancel and a man applying in 2021 as he treated Debity. Whether to believe Ferguson is a matter for the jury, not this court.

**V.**

In sum, the magistrate judge presented the discrimination claims to the jury as a Rule 49(b) general verdict with interrogatories and the retaliation claims as a general verdict. Because the jury found for the Board on the retaliation claims, we **AFFIRM** the judgment on those claims. We **AFFIRM** the judgment on the discrimination claims on alternative grounds. The

jury returned general verdicts inconsistent with the interrogatories, not special verdicts, but the magistrate judge, perhaps unwittingly, entered judgment within her discretion under Rule 49(b)(3)(A). We also **AFFIRM** the magistrate judge's denial of Debity's motion for judgment as a matter of law on the discrimination claims.

---

**CONCURRING IN THE JUDGMENT**

---

GRIFFIN, Circuit Judge, concurring in the judgment.

I would affirm the judgment in favor of the Board, not because the jury rendered a general verdict that was inconsistent with interrogatories as the majority holds, but because the magistrate judge appropriately reconciled the jury's special verdicts under Federal Rule of Civil Procedure 49(a). I therefore concur in the judgment only.[1]

There are three types of verdicts: special, general, and general with interrogatories. The first is one that requires "a special written finding on each issue of fact." Fed. R. Civ. P. 49(a)(1). Special verdicts occur "where the jury finds only issues of fact and the court applies the law." *Bills v. Aseltine*, 52 F.3d 596, 605 (6th Cir. 1995); *see* Fed. R. Civ. P. 49(a)(3).

Conversely, a general verdict simply asks the jury to determine ultimate liability without specific factual findings. *See, e.g.*, *Bah. Agric. Indus. Ltd. v. Riley Stoker Corp.*, 526 F.2d 1174, 1181 n.1 (6th Cir. 1975) ("The general verdict reads as follows: Verdict. We, the Jury, . . . find for the Plaintiff in the sum of $725,895.00 . . . ."); *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 465 n.2 (6th Cir. 1999) (classifying verdict as a general verdict where jury had to mark "yes or no" to the sole question: "Did the defendant discriminate against the plaintiff by terminating her on the basis of her disability, in violation of the Americans with Disabilities Act?").

A hybrid between the two is a general verdict with interrogatories, which consists of a general verdict accompanied by factual questions. *See* Fed. R. Civ. P. 49(b); *see also Sakamoto v. N.A.B. Trucking Co.*, 717 F.2d 1000, 1003 n.3 (6th Cir. 1983). This type of verdict "is used to give close attention to certain factual matters," *Bills*, 52 F.3d at 605, and "check the propriety of the general verdict," *Portage II*, 899 F.2d at 1520 (citation omitted).

---

[1]I also agree that the Board's affirmative defense supports the jury's verdict for the reasons explained in the magistrate judge's opinion and order.

As the majority explains, "[i]f a court asks for a general verdict, then any factual question is an interrogatory.  If it does not, then any factual question is a special verdict."  We previously elaborated on this distinction:

> A special verdict is one in which the jury finds *all* the facts and then refers the case to the court for a decision on those facts.  It is rendered in lieu of a general verdict and contains findings on *all* material issues in the case.  [Interrogatories that accompany general verdicts], on the other hand, are propounded as *selected* issues of fact, and answers to them are always . . . given in connection with, not in substitution of, a general verdict.

*Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1519 (6th Cir. 1990) (citation omitted).

Contrary to the majority's conclusion, the jury verdict form here did not ask for a general verdict—nowhere did it request the jury to find liability for or against a party.  Therefore, the magistrate judge correctly classified the verdict form as one requiring special verdicts "because it asked the jury to determine issues of fact."  *Debity v. Monroe Cnty. Bd. of Educ.*, 2024 WL 2703758, at *2 (E.D. Tenn. Jan. 26, 2024).  By checking "yes" to Questions 1(a) and 1(b), the jury made two factual findings:  (1) the Board used a lower wage scale to determine plaintiff's wage than it used for a male employee's wage, and (2) the Board had a legitimate reason other than sex for the lower wage scale.  But the form did not ask the jury to take the next step and find in favor of the Board on the discrimination claims.  Nor did it require the jury to render a judgment on the retaliation claims in Question 2.  Because the jury did not write, answer, or conclude that the Board is liable, the magistrate judge appropriately entered "its judgment," Fed. R. Civ. P. 49(a)(3), in favor of the Board based on the jury's answers to these questions.

Question 3, which concerned plaintiff's potential damages, further demonstrates that the first two questions were special verdicts.  "[T]he term 'damages' in the context of a special verdict has more limited meaning than in a general verdict:  It refers only to the loss suffered by the plaintiff, a question of fact."  *Freeman v. Chi. Park Dist.*, 189 F.3d 613, 616 (7th Cir. 1999).  In other words, for special verdicts, the jury determines "the amount of the loss," which the judge will award only if his "application of the law to the facts as they are found by the jury" requires a judgment for the plaintiff.  *See id.*

The verdict form used in this case, while inartful, complied with this procedure:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MARINA DEBITY,                                    )
                                                  )
            Plaintiff,                            )
                                                  )
v.                                                )          No. 3:22-CV-06-JEM
                                                  )
MONROE COUNTY BOARD OF EDUCATION,  )
                                                  )
            Defendant.                            )
                                                  )

**VERDICT FORM**

1.  Discrimination in violation of the Equal Pay Act, Title VII of the Civil Rights Act, and the Tennessee Human Rights Act:

    a.  Did the Plaintiff prove by a preponderance of the evidence that the Defendant used a lower scale for setting her wage than the wage of a male and the jobs at issue involved substantially equal skill, effort, and responsibility?

        ___✓___ Yes          _____No

    If yes, go to section b. If no, skip section b and proceed to Question 2.

    b.  Did the Defendant prove by a preponderance of the evidence that any pay disparity was due to a factor other than sex that was specifically chosen for a legitimate purpose?

        ___✓___ Yes          _____No

2.  Retaliation in violation of the Equal Pay Act, Title VII of the Civil Rights Act, and the Tennessee Human Rights Act:

    a.  Did the Plaintiff prove by a preponderance of the evidence that she engaged in legally protected activity for which the Defendant took a materially adverse employment action against her?

        _____ Yes          ___✓___No

If you answer "No" to Question 1(a) and Question (2), you do not need to answer Question 3.

3.  If your verdict is for the Plaintiff on either her discrimination or her retaliation claim, what is the amount of damages you allow for each of the following categories:

Compensatory damages:       $ 5,875

Economic losses (back pay):  $ 50,000

Future losses (front pay):   $ 139,171.50

Please have your foreperson sign and date this verdict form and notify the Court Security Officer that you have reached a verdict.



Jury Foreperson                                     5/25/23
                                                     Date

The form instructed the jury, "If you answer 'No' to Question 1(a) and Question 2, you do not need to answer Question 3." By implication, if the jury answered "yes" to either Question 1(a) or Question 2, it needed to answer Question 3. Because the jury answered "yes" to Question 1(a), it merely did what the form instructed it to do by answering Question 3.

Further, Question 3 asked the jury to quantify plaintiff's losses "[i]f your verdict is for the Plaintiff on either her discrimination or retaliation claim." Again, because the jury rendered a special verdict in favor of plaintiff on Question 1(a) of the discrimination claim, the jurors answered the damages inquiry set forth in Question 3, as instructed. By putting numerical values under Question 3, the jury simply completed its duties by answering all the factual questions on the verdict form. In other words, the jury's damages calculation was not a general verdict that found in plaintiff's favor; rather, if the magistrate judge had entered judgment in plaintiff's favor based on the jury's answers to the factual Questions 1 and 2, then the magistrate judge would have awarded damages in the amount determined by the jury in Question 3. Based on the jury's

answers to Questions 1 and 2, which formed the basis of the judgment in the Board's favor, the magistrate judge appropriately ignored plaintiff's damages.  *See* Fed. R. Civ. P. 49(a)(3).

The jury instructions do not transform the special verdicts into general ones, as the majority suggests.  Although the jury instructions and verdict form, considered together, can inform the court as to what type of verdict the jury rendered, the decisive question is whether these documents "required the jury to make a finding on the ultimate question of liability." *Del. & Hudson Ry. Co. v. Knoedler Mfrs., Inc.*, 805 F. App'x 149, 153 (3d Cir. 2020).  And here, the jury never opined on the ultimate question of liability.  Concluding that the jury found in the Board's favor requires a legal interpretation of the jury's factual findings (i.e. special verdicts), regardless of what the jury instructions may have anticipated, which is exactly what the magistrate judge properly did.

For these reasons, the magistrate judge appropriately concluded that the jury's verdicts were special verdicts, and I would affirm on that ground.  Because the majority nonetheless affirms on alternative grounds, I respectfully concur in the judgment only.